IN the MATTER OF B.A.S., Alleged to be
Alcoholic: STATE of Wisconsin, Appellant,
v.

B.A.S., Respondent.

Court of Appeals

*No. 85–2351. Submitted on briefs August 5, 1986.—Decided on
October 1, 1986.*

(Also reported in 397 N.W.2d 114.)

For the appellant, the cause was submitted on the briefs of *Danni L. Caldwell*, assistant corporation counsel for Waukesha County.

For the respondent, the cause was submitted on the brief of *Mark Lukoff*, first assistant state public defender.

BROWN, P.J.   The state appeals from an order dismissing a proceeding for the involuntary commitment of B.A.S., an alleged alcoholic. The trial court ruled that in order to hold a person involuntarily past the time set for preliminary hearing, a petition of three adults must be filed. Because no such petition was of record, the court dismissed the action. The state claims that if an alleged alcoholic is committed under certain emergency provisions of the statutes, a three person petition for further involuntary commitment is not necessary. We disagree and affirm.

This was originally a one-judge appeal pursuant to sec. 752.31(2), Stats. Because the issue presented is one of public importance and is capable and likely of repetition, the case was brought before the full panel pursuant to sec. 809.41(3), Stats.

Resolution of the issue requires interpretation of sec. 51.45, Stats., which is a substantial adoption of the Uniform Alcoholism and Intoxication Treatment Act. Interpretation of statutes is a question of law. *Wis. Bingo Supply & Equip. Co. v. Wis. Bingo Control Bd.*, 88 Wis.2d 293, 308, 276 N.W.2d 716, 723 (1979). We decide questions of law independently without deference to the decision of the trial court. *Ball v. Dist. No. 4, Area Bd.*, 117 Wis.2d 529, 537, 345 N.W.2d 389, 394 (1984).

Section 51.45(13), Stats., concerns involuntary commitment of alleged alcoholics. Section 51.45(13)(a) states that a person may be committed upon the petition of three adults, at least one of whom has personal knowledge of the conduct and condition of the person sought to be committed. Supporting affidavits must accompany the petition. Upon receipt of a proper petition, the court may order the alleged alcoholic to be temporarily committed. Section 51.45(13)(b). A preliminary hearing must be held no later than forty-eight hours after receipt of the petition. Section 51.45(13)(b)4. If a finding of probable cause is made, a final hearing must be held within fourteen days. Section 51.45(13)(e).

The state correctly observes, however, that the procedure described in sec. 51.45(13), Stats., is not the only method for temporarily committing a person involuntarily under the Act. The state focuses on sec. 51.45(12), entitled "emergency commitment." Under this section, if an intoxicated person has threatened to inflict or has inflicted harm on himself or herself or another and is likely to inflict such harm unless committed, a three person petition is unnecessary. Only one person is required to petition the court. Section 51.45(12)(b). This section may also be used if a person is "incapacitated" by alcohol. Section 51.45(12)(a). The court or court commissioner may then order the person temporarily committed "pending the outcome of the preliminary hearing under sub. (13)(d)." Section 51.45(12)(c)1.

The state argues that once an alleged alcoholic's initial commitment is obtained, either by a one person petition or a three person petition, the court then has authority to hear the resultant preliminary hearing and,

if probable cause for commitment is found, the final commitment hearing.

Thus, when B.A.S. was committed upon petition of a police officer reciting that she attempted physical harm upon her husband, threatened both her husband and son and was intoxicated, the state concludes that this petition suffices throughout the remainder of the proceedings.

We disagree. Section 51.45(12)(e), Stats., specifies that:

> [n]o person committed under this subsection [emergency commitment] shall be detained in any treatment facility beyond the time set for a preliminary hearing.... *If a petition for involuntary commitment under sub. (13) has been filed* and a finding of probable cause for believing the patient is in need of commitment has been made under sub. (13)(d), *the person may be detained until the petition has been heard and determined.* [Emphasis added.]

The language is clear. The one person petition is sufficient to commit a person on an emergency basis until the preliminary hearing. Usually, the hearing must take place within forty-eight hours of the one person petition. Section 51.45(12)(c)4.[1] The above language, however, explicitly commands that a person may not be held beyond this time period unless a petition for involuntary commitment under subsec. (13) has been filed. Thus, it is clear from the statute itself that a three person petition is necessary to keep the person committed beyond

---

[1] The time may be extended an additional forty-eight hours if a person is unable to assist in his or her own defense because of continuing incapacitation. Sec. 51.45(12)(c)4, Stats. The extension may be granted upon motion of the person or the person's attorney.

the time set for preliminary hearing. This is so even if temporary commitment stems from an earlier emergency petition under sec. 51.45(12).

The state claims that this interpretation works unreasonable results and hampers the legislature's efforts in dealing with alcoholics by ignoring the purpose of sec. 51.45(12), Stats. The state claims that the purpose of the emergency section is to commit individuals for a longer than temporary period; that to read it otherwise renders the section superfluous.

The state asserts that if emergency commitment under subsec. (12) is limited to short term commitment, it serves no different purpose than that afforded by subsec. (11), relating to treatment of incapacitated persons. Subsection (11) authorizes police to involuntarily place an intoxicated person in protective custody for up to 72 hours. Section 51.45(11)(b) and (d), Stats. The state concludes that subsec. (11) and subsec. (12) fulfill the same purposes if the statute is to be interpreted in the manner that the trial court has read it and subsec. (12) is therefore superfluous.

Again, we disagree. Subsections (11) and (12) have different procedures and different purposes. Subsection (11) needs no petition; subsec. (12) does. Subsection (11) allows only a maximum of 72 hours detention. Subsection (12) allows another 48 hours beyond the 72 hours if a petition is filed. The purpose of subsec. (11) is detailed in the commissioners' note to the Uniform Alcoholism and Intoxication Treatment Act:

> A small minority of intoxicated persons are "incapacitated" in that they are unconscious or incoherent or similarly so impaired in judgment that they cannot make a rational decision with regard to their need for treatment. Section [11](b) authorizes the

police ... to take such individuals into protective custody and to a public treatment facility for emergency care. This is intended to assure that those most seriously in need of care will get it.

. . . .

  Section [11](d) provides that an incapacitated person can be held at a treatment facility without consent or further civil procedures for not longer than 48 hours. By the end of 48 hours most persons who have been incapacitated by alcohol will be sufficiently detoxified to be able to make a rational decision about their need for further treatment. To provide for those very few individuals who may still be incapacitated (perhaps even unconscious) at the end of 48 hours, Section [12]provides for an emergency commitment procedure based on a written application . . . .

Unif. Alcoholism and Intoxication Treatment Act sec. 12 Commissioners' note, 9 U.L.A. 82–83 (1971).

  Thus, subsec. (11) is a protective custody device; it is for a limited time only—that is, until detoxification occurs. It is not a "commitment" but a program of emergency assistance. If more than detoxification is necessary for the person, then commitment may be indicated. The statute specifically states, however, that a petition must be filed under the emergency commitment act, subsec. (12), if commitment is requested. Once a petition is effected, then subsec. (12) becomes operative.

  Subsection (12), the emergency commitment act, is intended to be more than in-custody detoxification. It is a program for short term commitment. As the commissioners' note to the emergency commitment section of the Uniform Act explains:

It is anticipated that the need to resort to short term commitment for emergency medical care under this section will arise most infrequently, but the procedure does provide a means of dealing with situations not covered by other parts of the Act. It is meant to be utilized only in true emergency situations where immediate action to cope with the crisis is essential and where the delay of court proceedings would be dangerous. For example, it might be necessary to use this emergency commitment procedure for an alcoholic who becomes intoxicated at home and whose behavior becomes assaultive, or for an incapacitated alcoholic already involuntarily in a treatment facility for the 48-hour maximum who continues to be so severely incapacitated, perhaps because of brain damage, that he cannot make a rational decision about his continuing need for care.

*Id.* at sec. 13 commissioners' note, 9 U.L.A. 87–88. Emergency commitment under subsec. (12), then, is intended to be used as an adjunct to subsec. (11). It is to be used sparingly and, even then, the person may only be committed a short time.

When the need for a longer period of care is alleged, it will not be justified merely on the grounds that the person needs treatment. As stated in the commissioners' note:

[I]nvoluntary commitment would *not* be warranted merely because the person needs treatment, or has substantially inconvenienced his family, or has frequently been intoxicated in public, or because his drinking is harmful to his health. Commitment would be warranted, however, if the alcoholic exhibited cognitive deficiencies and was so debilitated that his thinking was confused not only with respect to

297

his drinking problem but in other areas of behavior as well. [Emphasis in original.]

*Id.* at sec. 14 commissioners' note, 9 U.L.A. 92. Thus, it follows that a petition for involuntary commitment must necessarily allege information additional to the need for treatment. The petition must also allege that cognitive deficiencies have developed which debilitate the person's functioning. That this information must be provided in a subsec. (13) petition, there is no doubt. Subsection (13)(a) requires the petition to allege that:

> the condition of the person is such that he or she habitually lacks self-control as to the use of alcohol beverages, and uses such beverages to the extent that health is substantially impaired or endangered and social or economic functioning is substantially disrupted.

Section 51.45(13)(a)1, Stats. We note that this is the same language as that provided in the Uniform Act, upon which the commissioners' notes regarding the need to allege cognitive deficiencies are based. We conclude that the petition for involuntary commitment imposes a duty to provide different information than the petition for emergency commitment and is a necessary prerequisite, therefore, to further involuntary commitment.

We disagree also with the state's contention that it will be difficult to obtain three signatures of adults. Only one of the adults must have personal knowledge of the conduct and condition of the alleged alcoholic. Section 51.45(13)(a), Stats. It is sufficient if the other two petitioners provide the bases for their beliefs if not made upon personal knowledge. Section 51.45(13)(a)5. This three person petition does not seem unreasonably diffi-

cult to obtain. We view the three person petition as an extra precaution ensuring that more than just one person has been involved in the decision to seek final commitment. This assures that all petitioners have studiously reflected upon the decision to file the petition.

We conclude that the statute commands the filing of a three person petition for involuntary commitment and that this construction is neither contrary to the intent of the legislature nor unworkable.

*By the Court.* —Order affirmed.